Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Arlander Keys |
|---|---|---|---|
| CASE NUMBER | 03 C 760 | DATE | 12/29/2004 |
| CASE TITLE | Ridge Chrysler Jeep LLC et al. vs. Daimler Chrysler Services | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Defendant's Motion to Strike Plaintiff's Expert [#141] is **granted**; Plaintiffs' Motion to Compel Discovery is **denied.** *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | *10* number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 3 0 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 169 |
| ✓ | Copy to judge/magistrate judge. | U.S. DISTRICT COURT | 12/29/2004 date mailed notice | |
| FT/ *Aecy* | courtroom deputy's initials | 2004 DEC 29 PM 2:53 Date/time received in central Clerk's Office | FT mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RIDGE CHRYSLER JEEP L.L.C., d/b/a )
MARQUETTE CHRYSLER JEEP and SALES, )
INC., d/b/a DODGE OF MIDLOTHIAN, )
                            )   Case No.: 03 C 760
       Plaintiffs, )
                            )   Judge Wayne R. Andersen
   vs. )
                            )
DAIMLER CHRYSLER SERVICES NORTH )  Magistrate Judge
AMERICA, L.L.C. d/b/a CHRYSLER )  Arlander Keys
FINANCIAL COMPANY, L.L.C., )
                            )
       Defendant. )

DOCKETED
DEC 3 0 2004

## MEMORANDUM OPINION AND ORDER

This case is before the Court on two motions: Defendant's

Motion to Strike Plaintiffs' Expert, and Plaintiffs' Motion to

Compel Discovery. For the reasons set forth below, the Court

grants Defendant's Motion to Strike, and denies Plaintiffs'

Motion to Compel Discovery.

### Facts & Procedural History

On February 3, 2003, Plaintiffs Ridge Chrysler Jeep L.L.C.[1]

and Sales, Inc.[2], ("the Dealerships"), sued Daimler Chrysler

Services North America, L.L.C., d/b/a Chrysler Financial Company,

L.L.C. ("Chrysler Financial"). In their Complaint, the

Dealerships, which are both owned by Gerald Gorman, allege that

---

[1] Formerly doing business as Marquette Chrysler Jeep at
65th Street and Western Avenue in Chicago, Illinois.

[2] Doing business as Dodge of Midlothian, in Midlothian,
Illinois.

Chrysler Financial adopted an internal corporate policy of refusing to provide financing to non-suburban African-American car buyers, regardless of their creditworthiness, and then punished the Dealerships for refusing to go along with that discriminatory practice. The Dealerships alleged breach of contract, tortious interference with prospective business or economic advantage, violation of the Automobile Dealers' Day in Court Act, and violation of the Illinois Motor Vehicle Franchise Act.

The Dealerships' Complaint piggybacked on another case filed that same day by a putative class of minority plaintiffs, who allege that Chrysler Financial engaged in predatory lending practices by refusing to give lower financing rates to otherwise qualified minority car buyers *See Coburn v. Daimler Chrysler Services North America*, No. 03 C 759, 2003 WL 22425007 (N.D. Ill. Oct. 23, 2003)(Judge Castillo).

On October 14, 2003, the Court entered a very generous scheduling order, in accordance with the parties' previous agreement, setting forth various discovery deadlines. This order directed Plaintiffs to disclose their expert witness(es) on or before June 11, 2004, and instructed Defendant to disclose its expert(s) on or before September 3, 2004. The parties agreed that Plaintiffs' expert witnesses would be deposed by July 23, 2004, and that Defendant's experts would be deposed by

October 15, 2004.  The Order provided that all discovery would be completed by December 10, 2004.

Shortly thereafter, the parties became engaged in a discovery dispute.  Defendant had objected to a number of Plaintiffs' discovery requests, citing privilege, relevance, and other grounds for withholding the evidence.  On November 14, 2003, Plaintiffs sent Defendant a letter, challenging Defendants' justifications for withholding the testimony and/or evidence in dispute.  One week later, Defendant responded to Plaintiffs' letter, addressing each of Plaintiffs' complaints and, in most instances, explaining why the disputed evidence would not be forthcoming.  Defendant concluded by stating that: "We trust that this letter addresses the issues in your November 14 letter.  We would be happy to discuss those issues with you further, if you wish."[3]

Plaintiffs did not respond to Defendant's letter, and discovery proceeded.  On June 11, 2004, Plaintiffs' expert disclosure deadline passed without any disclosure.  Conversely, Defendant disclosed its retained expert and his expert report on September 3, 2004, as scheduled.  In a letter to Plaintiffs, dated that same day, Defendant's counsel noted that Plaintiffs had failed to disclose an expert witness by June 11, 2004, and

---

[3]  Plaintiffs would wait over one year before raising these issues again.

explained that Defendant was willing to extend the deadline for

deposing its own expert witness, if Plaintiffs so desired,

because "October will be an extremely busy month for depositions

in this matter."  Defs. Motion to Strike, Ex. 2.

In addition to numerous depositions, October was marked by a

resurgence of discovery disputes between the parties.  On October

5, 2004, Defendant filed an Emergency Motion for Sanctions

against Plaintiffs, claiming that Plaintiffs had persistently

failed to answer Defendant's damages interrogatories, despite an

order from the Court directing Plaintiffs to do so.  Pursuant to

the Court's order, Plaintiffs responded to the damages

interrogatories on October 15, 2004.  In their response,

Plaintiffs referenced an attached letter report from accountant

Carl Woodward.  Mr. Woodward's letter report described his

experience with automobile dealerships and accounting, and

estimated Plaintiffs' damages at approximately $22 million.

On October 20, 2004, Defendant filed a Motion to Strike Mr.

Woodward's report[4];  Defendant noted that the deadline for

disclosing expert witnesses had long since passed, and urged the

Court to prohibit Plaintiffs from sneaking this expert letter in

through the "back door."  In addition, Defendants pointed out

that Mr. Woodward's letter report did not comply with rule

---

[4] Two days later, on October 22, 2004, attorney Elizabeth
Fegan filed an appearance on behalf of Plaintiffs

26(a)(2)(B)'s requirements for expert reports, because it failed
to set forth the data and other information that formed the basis
of his opinions and failed to disclose his compensation or
relevant prior experience.

In response, Plaintiffs argued that any claim that Defendant
was prejudiced by the delayed disclosure could be cured by an
extension of the discovery deadline. The Court informed the
parties in open court that the discovery deadline was firm, and
that it would not be extended.

Confronted with the Court's refusal to extend the discovery
deadline, Plaintiffs scheduled numerous depositions, and filed a
Motion to Compel. The subject of the Motion was the evidence
that was at the heart of the parties' November 2003 discovery
dispute, as memorialized by Plaintiffs' letter, dated November
14, 2003, and Defendant's response, dated November 21, 2003.
Notably, Plaintiffs had not made any attempts to obtain this
evidence in the one year following Defendant's responsive
November 21, 2003 letter.

## DISCUSSION

Currently before the Court are Defendant's Motion to Strike
Plaintiffs' Expert, and Plaintiff's Motion to Compel Discovery.
The Court will address each Motion in turn.

## I. Motion to Strike

Defendant asks the Court to bar Plaintiffs from introducing

or relying upon the testimony of Mr. Woodward and/or his letter report at trial. Defendant argues that it has been prejudiced by Plaintiffs' unexplained failure to disclose Mr. Woodward in a timely manner, arguing that Plaintiffs' untimely disclosure has hindered its ability to prepare for trial.

Plaintiffs insinuate that Defendant has failed to carry its burden[5] of establishing that it was prejudiced by Plaintiffs' delay, responding, literally,: "no harm, no foul." Declining to give any reason whatsoever for waiting four months after the expert disclosure deadline to identify Mr. Woodward, Plaintiffs tacitly acknowledge at least a degree of prejudice by suggesting that the Court could resolve the problem by extending the discovery deadline.

Initially, the Court notes that Plaintiffs did not seek leave of Court to submit Mr. Woodward's report. Instead, Plaintiffs simply attached Mr. Woodward's letter report to its responses to Defendant's interrogatories - a full four months after the expert disclosure deadline had passed. Plaintiff's unorthodox and untimely disclosure violates Rule 26 and warrants granting Defendant's Motion to Strike.

Rule 26(a)(2) of the Rules of Civil Procedure requires parties to disclose their expert witnesses in accordance with a

---

[5] Of course, the law does not place the burden of establishing harm on Defendant.

court's order. The purpose of Rule 26 is to prevent any unfair, prejudicial surprise. *Scranton Gillette Communications, Inc. v. Dannhausen,* No. 96 C 8353, 1998 WL 566668, at *2 (N.D.Ill. Aug.26, 1998). Failure to comply with Rule 26(a) results in the "automatic and mandatory" exclusion of expert testimony "unless the party to be sanctioned can show that its violation . . . was either justified or harmless." *Baker v. Indian Prarie Comm. Unit School Dist. No. 204,* 1999 Wl 988799, at *1 (N.D. Ill. Oct. 27, 1999).

The Seventh Circuit has explained that a court has the power to exclude expert testimony, if the expert was not disclosed in a timely manner, because the tardy disclosure prejudices the other party:

> 'When one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction.' *In re Maurice,* 21 F.3d 767, 773 (7th Cir. 1994). The [court's] scheduling order provided simple and unequivocal deadlines. The defendants needed to conduct sufficient discovery of plaintiff's experts and their opinions to prepare for trial properly. Adherence to established guidelines is essential if all parties are to have a fair opportunity to present their positions. In the absence of a compelling excuse, a district court is well within its discretion to exclude untimely proffered evidence or testimony.

*Hill v. Porter Memorial Hosp.,* 90 F.3d 220, 224 (7th Cir. 1996).

As stated above, Plaintiffs have not attempted to demonstrate that their tardy disclosure of Mr. Woodward was

justified.  Nevertheless, Plaintiffs insist that Defendant has

not been harmed by the delay, because:   1) Defendant had done

little in the way of discovery on the issue of damages; and 2)

Defendant's expert reports concerned only liability, and not

damages[6].

Plaintiffs' argument fails to account for the possibility

that Defendant did little in the way of discovery on the damages

issues and failed to disclose a damages expert *precisely because*

Plaintiff did not disclose a damages expert.   Defendant has

complied with the Court's discovery deadlines every step of the

way.   After Plaintiff failed to disclose any expert witnesses by

the June 11, 2004 deadline, Defendants wrote to Plaintiffs,

confirming their intention to proceed to trial without expert

testimony.   Defendants reasonably relied upon this belief in

selecting their expert witnesses, scheduling discovery, and

preparing for trial.

With the significant amount of discovery scheduled during

the final weeks before the discovery deadline, it would have been

unfair to ask Defendants to take on the additional burden of

digesting Mr. Woodward's report, deposing Mr. Woodward, and

retaining its own damages expert.   Plaintiffs' desire to enjoy

_____

[6]  Plaintiffs further argue that any problem that Defendant
might have encountered in completing the necessary discovery
would be moot if the Court would extend the discovery deadline.
However, the Court has already refused to extend the now-passed
discovery deadline.

the luxury of proceeding to trial on their own timetable, without regard for the Court's previous scheduling order, is clearly outweighed by the prejudice to Defendant in this case. Therefore, the Court grants Defendant's Motion to Strike.

## II. Plaintiffs' Motion to Compel.

On December 6, 2004- four days before the close of discovery - Plaintiffs filed a Motion to Compel, seeking an array of evidence that it had not inquired about in almost thirteen months. Specifically, Plaintiffs argue that they are entitled to: 1) discovery related to other dealers in the Chicago Zone; 2) have the Court inspect, *in camera,* Mr. Gerry Beverman's notes and the DSC Audit Investigation to determine whether they are subject to the work product doctrine or attorney client privilege; 3) test the foundation for Defendant's assertion that conversations between Tim Devine, Jim Lawn, Bob Knight, and Jurgen Walker were privileged; and 4) to depose Chrysler Financial's President, Jurgen Walker.

Because the Court finds that Plaintiffs' Motion to Compel is a clear case of too little, too late, and because Plaintiffs have failed to comply with Rule 37(a)(2)(B) of the Federal Rules of Civil Procedure as well as Local Rule 37.2, the Court denies Plaintiffs' Motion.

Rule 37(a)(2)(B) requires parties to meet and confer, in a good faith effort to resolve discovery disputes before filing a

motion to compel with the court. Fed. R. Civ. P. 37(a)(2)(B).

Similarly, Local Rule 37.1 provides that "[t]he Court may deny

any discovery motion . . ., unless counsel for the moving party

files with the Court, at the time of filing the motion, a

separate statement showing that the attorney making the motion

has made a reasonable effort to reach agreement with opposing

attorney(s) on the matter(s) set forth in the motion."   "Failure

to comply with the local rules is not merely a 'harmless

technicality,' but can be a 'fatal' mistake." *Servin v. GATX

Logistics, Inc.*, 187 F.R.D. 561, 563 (N.D.Ill.1999) *quoting*

*Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th

Cir.1994),

Plaintiffs contend that they have satisfied the Rule 37

requirement, because "[o]n numerous occasions" they have

"attempted to confer with Defense counsel."  Pls' Motion to

Compel at 5.  The Court disagrees.

With regard to the "other dealer" evidence, Mr. Beverman's

notes, and the DSC Audit Special Investigation, Plaintiffs can

cite to only <u>one</u> such attempt – its November 14, 2003 letter

challenging Defendant's objection to producing certain evidence

and permitting certain testimony[7]. This letter is clearly

---

[7] "Local Rule 37.2 requires personal consultation.  An exchange of letters does not constitute compliance." *Tax Track Systems Corp. v. New Investor World, Inc.*, No. 01 C 6217, 2002 WL 31473818, at *7, n. 6 (N.D. Ill. Nov. 4, 2002).

insufficient to satisfy Plaintiffs' obligations under Federal and Local Rule 37.

In their November 14, 2003 letter, Plaintiffs noted that Defendant objected to Plaintiffs' discovery requests concerning other dealerships in the Chicago Zone on relevancy and privacy grounds. Plaintiffs forcefully argued their position that the information was highly relevant and discoverable, and attempted to allay Defendant's privacy concerns by suggesting that the parties seek a protective order.

Defendant thoroughly defended its position regarding "other dealer" discovery in its November 21, 2003 response to Plaintiffs' November 14, 2003 letter. Defendant cited to and discussed seven cases that supported its position that the other dealer discovery was not relevant to Plaintiffs' claims. Similarly, Defendant explained that Mr. Beverman's October 2, 2002 notes were protected by the work product doctrine. Plaintiffs did not challenge Defendant's interpretation of the cited caselaw or the work product doctrine.

Plaintiffs' letter also noted that it had received a one page document referring to the DSC Audit Special investigation, and requested that Defendant forward any investigation materials, the audit, and a report of the investigation. In response, Defendant requested that Plaintiffs "provide us with the bates number of the one- page document that refers to a 'DSC Audit

11

Special Investigation' so that we can better address [your concerns.]" Pls. Motion to Compel, Ex. 5, Defs. Nov. 21, 2003 letter, p. 6 ¶, 10.  Plaintiffs never identified the relevant bates number or otherwise followed up with Defendant's request[8].

Defendant concluded its November 21, 2003 letter by noting that "[w]e trust that this letter addresses the issues in your November 14 letter. We would be happy to discuss those issues with you further if you wish."  Of course, Plaintiffs never again contacted Defendant about the discovery issues raised in the letter until it filed this Motion to Compel – more than one year after Defendant defended its objections, and only four days before the close of discovery.

Plaintiffs exerted even less effort in attempting to comply with Rule 37 with regard to Mr. Devine's testimony.   Plaintiffs deposed Mr. Devine on December 12, 2003--over one year ago.  At the deposition, Defendant's counsel asserted that the attorney-client privilege protected conversations between Mr. Devine, other executives from Chrysler Financial, and their counsel. Plaintiffs' counsel agreed that he did not intend to ask Mr. Devine about conversations at which counsel was present.  *See* Timothy Devine 12/12/03 Dep. at pp. 200-201.  Plaintiffs never

---

[8] Subsequently, on April 4, 2004 Defendant identified an audit of Chrysler Financial's Chicago Zone as items 42-54 on its Amended Privilege Log.  Plaintiffs never challenged Defendant's assertion that the audit and related documents were protected by the attorney client privilege and/or work product doctrine.

again raised the issue until they filed this Motion to Compel.

Plaintiffs do not even pretend to have complied with Rule 37 with regard to Mr. Devine's testimony, but argue instead that it never waived its right to the testimony it now seeks. A review of Mr. Devine's testimony, however, clearly indicates that they have done just that. Mr. Devine testified that he had discussions with the Chrysler Financial executives in question *only* in the presence of counsel, and Mr. O'Hara agreed that he was not attempting to elicit testimony with regard to conversations where counsel was present. There is no factual basis for believing that Mr. Devine was not telling the truth. It would be inappropriate at this late juncture to allow Plaintiffs to go back on a fishing expedition and ask Mr. Devine questions that they now wish they had asked.

Finally, Plaintiffs demand that Defendant produce its President and CEO, Jurgen Walker, for deposition. Plaintiffs have never issued a notice to take Mr. Walker's deposition, or formally requested that he be made available. Despite the fact that Defendant informed Plaintiffs on two occasions that it would only produce Mr. Walker for a deposition if ordered by the Court[9], Plaintiff waited to file its Motion to Compel until four days before the close of discovery. Where a party has waited to

---

[9] Defendant's stated position obviates the need for Plaintiffs to pursue a Rule 37 conference on this matter.

bring a motion to compel until the eve of a discovery deadline, the court is justified in denying the motion. *See Harrison v. City of Seattle*, 315 F. supp.2d 1112, 1118-19 (W.D. Wash. 2004).

Plaintiffs' Motion to Compel raises issues that Defendant addressed, and reasonably assumed were resolved, over one year ago. Defendant methodically prepared for trial and conducted discovery under the assumption that Plaintiffs had dropped the objections raised both in the November 14, 2003 letter and in Mr. Devine's deposition. The Court acknowledges that Plaintiffs filed their Motion to Compel in advance of the discovery deadline. However, they filed it so late as to make it impossible to conduct the requested discovery within the discovery period.

The issues that dominate Plaintiffs' Motion were well known to Plaintiffs for over one year, and yet Plaintiffs failed to pursue them. It strikes the Court that it was not until October 22, 2004, when Ms. Fegan filed her appearance on Plaintiffs' behalf, that Plaintiffs demonstrated that they were serious about conducting discovery in this case. Prior to her appearance, the Court was unsure as to whether Plaintiffs were conducting any of their own discovery, as opposed to responding to Defendant's discovery requests and motions to compel. Shortly after her appearance, Ms. Fegan filed a response and opposition to Defendant's Motion to Strike Plaintiffs' Expert, as well as the

14

belated Motion to Compel Discovery of Evidence that her co-counsel had apparently conceded more than a year earlier, and a Motion for Extension of the Discovery Deadline. Although Plaintiffs have not even attempted to show good cause for an extension of the discovery deadline, they appeared to be genuinely surprised when the Court did not extend it as a matter of course. Such requests are not automatically granted by this Court. It appears that Plaintiffs have conducted--or attempted to conduct--more discovery since early November than at any time during the past thirteen months. The flurry of activity since November tends to bear this out. Unfortunately, it was not possible for Plaintiffs to conduct the bulk of their discovery during the final six weeks of the thirteen month discovery period. But it is Plaintiffs--not Defendant--who must endure the harsh results of this tactical decision.

## CONCLUSION

For the reasons set forth above, the Court grants Defendant's Motion to Strike Plaintiffs' Expert. In addition, the Court denies Plaintiffs' Motion to Compel.


Dated: December 29, 2004

                    E N T E R:

                    _Arlander Keys_
                    _____
                    ARLANDER KEYS
                    United States Magistrate Judge


15