UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAIMLERCHRYSLER FINANCIAL SERVICES AMERICAS, LLC., f/k/a DAIMLERCHRYSLER SERVICES NORTH AMERICA, LLC, <br><br> Plaintiff, <br><br> v. <br><br> GERALD W. GORMAN, an individual, and ELIZABETH A. GORMAN, an individual, <br><br> Counterclaim Defendants / Judgment Debtors, <br><br> THE GORMAN GOOD GOVERNMENT GROUP, <br><br> Third Party Respondent. | Case No. 03 CV 00760 |

## MOTION FOR TURNOVER ORDER AND JUDGMENT

NOW COMES Daimler Chrysler Financial Services Americas, LLC, f/k/a DaimlerChrysler Services North America, LLC ("Chrysler Financial" or "Plaintiff"), Defendant/Counterclaim Plaintiff herein, by and through its attorneys, THOMPSON COBURN LLP, and, moves this Court to enter a turnover order and judgment against The Gorman Good Government Group ("GGGG") ordering and directing GGGG as garnishee, to turnover to Plaintiff the sum of $243,845 in partial satisfaction of Plaintiff's judgment herein and to determine that Plaintiff has a priority interest in those funds over any adverse claimant and in support thereof, states as follows:

## BACKGROUND

1. On October 26, 2006, this Court entered a $4.2 million consent judgment in favor of Chrysler Financial and against Plaintiff/Counterclaim Defendant Sales, Inc., d/b/a Dodge of Midlothian ("Sales" or "Dodge of Midlothian"), and its owners, Counterclaim Defendants Gerald and Elizabeth Gorman (husband and wife).

2. Execution of the judgment was stayed until March 25, 2008, when the United States Court of Appeals for the Seventh Circuit issued its mandate in the appeal in this action.

3. To date, the judgment remains completely unsatisfied.

4. During discovery of the underlying lawsuit, Chrysler Financial discovered that in 2002, Sales made six loans totaling $395,000 to GGGG, an Illinois political committee maintained by Elizabeth Gorman, Counterclaim Defendant and Judgment Debtor herein, to support her political campaigns.[1]

5. In 2003, the six aforementioned loans were reclassified as having been made by Gerald Gorman, Counterclaim Defendant and Judgment Debtor herein, to GGGG.[2]

6. Between September 19, 2003 and March 27, 2009, GGGG made 23 payments totaling $51,075 toward the loans from Gerald Gorman. A chart reflecting these payments and the supporting documents are attached hereto as <u>Group Exhibit 6</u>. After accounting for all of these payments, GGGG owes Gerald Gorman $243,845 for the six loans as of December 31,

---

[1] True and correct copies of GGGG's Form D-2 Semiannual Reports of Campaign Contributions and Expenditures ("Form D-2") are attached hereto as <u>Exhibit 1</u>, Initial January-June 2002 Form D-2 Report (filed July 30, 2002), Schedule A, Part 3 ("Loans Received"), and Schedule C ("Debts and Obligations"); and <u>Exhibit 2</u>, Initial July-December 2002 Form D-2 Report (filed March 12, 2003), Schedule A, Part 3 ("Loans Received"), and Schedule C ("Debts and Obligations").

[2] True and correct copies of GGGG's Amended Form D-2 are attached hereto as <u>Exhibit 3</u>, First Amended January-June 2002 Form D-2 Report (filed November 26, 2003), Schedule A, Part 3 ("Loans Received"), and Schedule C ("Debts and Obligations"); and <u>Exhibit 4</u>, First Amended July-December 2002 Form D-2 Report (filed November 26, 2003), Schedule A, Part 3 ("Loans Received"), and Schedule C ("Debts and Obligations"); *see also* <u>Exhibit 5</u>, Gerald Gorman Dep. 2303:7:-2305:7.

2009. See Group Exhibit 6, July-December 2009 Form D-2 Report (filed January 20, 2010), Schedule C ("Debts and Obligations").

7. Between December 15, 2009 and December 26, 2009 (the last payment being made after the service of the Citation), GGGG made two donations totaling $70,000 to the Orland Township Republican Organization ("Orland Organization"). See Deposition of Margaret Walsh, attached hereto as Exhibit 7, at 91. Upon information and belief, Elizabeth Gorman is the President of the Orland Organization. See id. at 92-3.

8. The aforementioned donations were made at the direction of Elizabeth Gorman, and depleted GGGG's fundraising account. Id. at 100, 104.

## ARGUMENT

9. Federal Rule of Civil Procedure 69(a) "provides that in the absence of an applicable federal statute the procedure in supplementary proceedings to execute a federal court's judgment shall be that of the forum state." *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1226 (7th Cir. 1993).

10. "In Illinois, civil judgments may be enforced through supplementary proceedings pursuant to 735 ILCS 5/2-1402 and Illinois Supreme Court Rule 277." *FM. Indus., Inc. v. Citicorp Credit Serv., Inc.*, 656 F.Supp.2d 795, 797 (N.D. Ill. 2009). "Supplementary proceedings involve post-judgment processes which support the judgment creditor in asset discovery and final satisfaction of judgment." *Id.* at 798.

11. The Illinois citation statute (735 ILCS 5/2-1402) provides: "A judgment creditor . . . is entitled to prosecute supplementary proceedings for the purposes of examining . . . any [ ] person to discover assets or income of the [judgment] debtor . . . and of compelling the application of non-exempt assets or income discovered toward the payment of the amount due

under the judgment." 735 ILS 5/2-1402(a). This "supplemental proceeding" is "commenced by the service of a citation" on the third party to discover assets and income of the judgment debtor. *Id.*

12. On December 24, 2009, Chrysler Financial served GGGG with a Citation to Discover Assets to Third Party. A true and correct copy of this citation is attached hereto as <u>Exhibit 8</u>.

13. Under the Illinois citation statute, a Court may enter any order or judgment against the cited third party that could be entered in any garnishment proceeding. 735 ILCS 5/2-1402(c)(4). In turn, Illinois garnishment statutes, 735 ILCS 5/12-701 *et seq.*, allow the judgment creditor to obtain judgment against the third party ("garnishee") for the third party's indebtedness to the judgment debtor:

> In a [garnishment] proceeding, the judgment creditor stands in the shoes of the judgment debtor and, consequently, the claim asserted against the garnishee must be one which the judgment debtor could have maintained and enforced in his own name. . . . The Code of Civil Procedure specifically provides that any judgment entered against a garnishee shall be entered in favor of the judgment debtor to whom the garnishee is indebted . . . for the use of the judgment creditor. The reason for this requirement is obvious. In a garnishment proceeding, it is the legal interest of the judgment debtor that is being asserted against the garnishee, albeit by the judgment creditor.

*Buckner v. Causey*, 724 N.E.2d 95, 104 (Ill. App. Ct. 1999) (quotations and citations omitted). *See* 735 ILCS 5/2-711(d).

14. "[S]tatutes [such as 735 ILCS 5/2-1402] authorizing a judgment creditor to discover the assets of a debtor or of a third party in order to enforce a judgment are to be broadly construed." *Society of Lloyd's v. Estate of McMurray*, 274 F.3d 1133, 1135-36 (7th Cir. 2001).

"The Illinois statute vests courts with broad powers not only to order discovery, but also to compel application of discovered assets to satisfy a judgment." *Id.* at 1136.

15. "Proceedings to enforce judgments are meant to be swift, cheap, informal." *Ruggiero*, 994 F.2d at 1226. Accordingly, a federal district court may proceed in supplemental proceedings in any way that satisfies due process requirements and is not confined to the Federal Rules of Civil Procedure. *Id.* at 1226-27.

16. Therefore, under the Illinois citation and garnishment statutes, Chrysler Financial may stand in the shoes of Gerald Gorman and assert any rights against GGGG that Gerald Gorman could have maintained on his own behalf.

17. Under Illinois law, a political campaign committee such as GGGG is a legal entity that may be sued to enforce its financial obligations. 10 ILCS 5/9-1 *et seq.*; *Progress Printing Corp. v. Jane Byrne Political Committee*, 601 N.E.2d 1055 (Ill. App. Ct. 1992).

18. It is undisputed that GGGG is indebted to Gerald Gorman. See Exhibits 1-4, and Group Exhibit 6.

19. That there is no documentation of the loans by Gerald Gorman, such as a Note, and GGGG has made sporadic payments to Gerald Gorman on the loans from 2002-2009, it appears that the loans have no specific repayment terms.

20. As such, the loans are deemed to be "demand loans," meaning that repayment is due upon demand for payment. *Robinson v. Midlane Club, Inc.*, 1996 WL 88991, at *4 (N.D. Ill. Feb. 28, 1996) ("It is undisputed that Robinson's 'additional loans' to Midlane did not contain a specific repayment term, and, as such, are deemed to be demand loans."); *Schreiber v. Hackett*, 527 N.E.2d 412, 413 (Ill. App. Ct. 1988) (statute of limitations as to oral loan repayable on demand does not run until demand for payment made); *Swerdlow v. Mallin*, 476 N.E.2d 464, 468

(Ill. App. Ct. 1985) ("The lack of a time for payment makes the note a demand note."); *McConnaughy v. Gage*, 252 Ill.App. 17, 1929 WL 3157, at *2 (Ill. App. Ct. 1929) ("[A] note payable after an indefinite time is in contemplation of law a note payable on demand.").

21. Because Gerald Gorman would be entitled to demand payment at any time for GGGG's indebtedness, Chrysler Financial, as judgment creditor, may demand payment in Gerald Gorman's place to be applied to its outstanding judgment.

22. Chrysler Financial's commencement of the citation proceeding against GGGG constitutes a demand that GGGG pay the loans owed to Gerald Gorman. *Exchange Nat. Bank of Chicago v. Crest Finance Co.*, 203 N.E.2d 58, 62 (Ill. Ct. App. 1964) (filing of suit to recover amount due on note "constitutes a demand under Illinois law"); *International City Bank and Trust Co. v. Morgan Walton Properties, Inc.*, 675 F.2d 666, 668 (5th Cir. 1982) ("Because the filing of the lawsuit constitutes a demand [for payment of a note], a formal demand was not necessary."); *Morris Silverman Mgmt. Corp. v. Western Union Financial Services, Inc.*, 284 F.Supp.2d 964, 986 (N.D. Ill. 2003) ("Case law, however, supports that any demand requirement is satisfied by the filing of a lawsuit.").

23. Therefore, Chrysler Financial is entitled to compel application of GGGG's indebtedness to Gerald Gorman in partial satisfaction if its outstanding judgment.

24. Notwithstanding the plain and concise language and lien placed on the assets of the GGGG upon service of the Citation upon it on December 24, 2009, two days after said service of the Citation, the GGGG transferred virtually all of its cash assets to the Orland Organization, see Exhibit 7, pages 100 and 101 of the Walsh Citation Examination.

25. Specifically, when questioned about the transfer of virtually all of the cash held by the GGGG to the Orland Organization, another political organization run by the judgment debtor Elizabeth Gorman, the following dialogue occurred:

(Page 100) Q. So her reason was not that the Orland Organization needed the money or she was making a charitable donation to this organization, she just wanted the money out of that Bank?

A. Yes ...

(Page 101) Q. What was the reason for opening a new bank account?

A. She wanted a new bank account. She wanted a different bank.

Q. Why?

A. She didn't say.

Q. Was it because of this Citation?

A. I didn't specifically have that conversation.

Q. Is it your understanding?

A. It would be my guess but ... I shouldn't say that ....

(Page 102) Q. Do you know of any political or business reason why the Gorman Group would make a donation of $70,000 to the Orland Organization?

A. Not specifically, no.

Q. It's not something they had done before?

A. Not to my knowledge, no.

26. GGGG's transfer of $68,000 on December 26, 2009 to the Orland Organization – after its receipt of Chrysler Financial's citation to discover assets on December 24, 2009 – blatantly and intentionally violated the terms of the citation. See supra ¶ 7.

27. The citation specifically prohibited the GGGG from "making or allowing any transfer or other disposition" of non-exempt property until further notice. See Exhibit 8.

28. As the transfer of funds from GGGG to the Orland Organization violated the specific terms of the citation, Elizabeth Gorman and the GGGG should be directed to return all such funds to GGGG, and in turn, to Chrysler Financial.

## CONCLUSION

WHEREFORE, Daimler Chrysler Financial Services Americas, LLC, f/k/a DaimlerChrysler Services North America, LLC, Defendant/Counterclaim Plaintiff herein, respectfully moves this Court to enter an order directing the Gorman Good Government Group to turn over to Plaintiff the sum of $243,845 and to enter a judgment against the Gorman Good Government Group in said amount. Additionally, Plaintiff moves that any adverse claim to said funds by Gerald Gorman be declared to be subordinate and inferior to the claim of Plaintiff and that Plaintiff takes said funds free and clear of all claims. Plaintiff further moves that Elizabeth Gorman be directed to return over to Plaintiff herein all funds transferred from the Gorman Good Government Group to the Orland Township Republican Organization.

Respectfully submitted,

Daimler Chrysler Financial Services Americas, LLC, f/k/a DaimlerChrysler Services North America, LLC

By: /s/ Glen T. Keysor
      One of its Attorneys

Glen T. Keysor, Esq. (ARDC # 01456032)
Sara A. Eber, Esq. (ARDC # 6299707)
Thompson Coburn LLP
55 East Monroe St., 37th Floor
Chicago, IL 60603
(312) 346-7500